IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent/Plaintiff, | ) | |
| vs. | ) | No. 3:03-CR-0387-H |
| | ) | No. 3:04-CV-2416-H (BH) |
| ENRIQUE GARCIA, JR., ID # 31220-177, | ) | ECF |
| Movant/Defendant. | ) | Referred to U.S. Magistrate Judge |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Movant, an inmate currently incarcerated in the federal prison system, filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. The respondent is the United States of America (government).

### B.  Procedural History

On November 5, 2003, a grand jury indicted movant for possessing a firearm after previously being convicted of a felony.   On December 30, 2003, movant pled guilty to the sole count in the indictment.  He signed a plea agreement which provides among other things that (1) the charged offense carries a statutory maximum sentence of ten years imprisonment; (2) the Court would impose his sentence pursuant to the United States Sentencing Guidelines and that he understood that "no one can predict with certainty what guideline range will apply in this case until after a presentence investigation has been completed and the Court has ruled on the results of that invest-

igation"; (3) movant "understands that this plea agreement" creates no "right to be sentenced within, or below, any particular guideline range, and fully understands that determination of the guideline range, as well as the actual sentence imposed (so long as it is within the statutory maximum), are solely in the discretion of the Court"; (4) the plea "is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement"; and (5) the plea agreement constitutes the entire agreement between the parties "and may not be modified unless the modification is in writing and signed by all parties."  In the plea agreement, furthermore, movant waived his right to appeal his conviction and sentence, and further waived his right to contest his conviction and sentence in any collateral proceeding.  However, he specifically "reserve[d] the rights to bring (a) a direct appeal of (i) a sentence exceeding the statutory maximum punishment, (ii) an upward departure from the guideline range deemed applicable by the district court, or (iii) an arithmetic error at sentencing, and (b) a claim of ineffective assistance of counsel."

Before accepting the plea, the Court examined movant as to its voluntariness. Movant stated that he was twenty-five years old and possessed a ninth grade education.  He stated that he read the plea agreement and had no questions about it.  His attorney indicated that movant appeared to understand the agreement.  After the prosecutor summarized the plea agreement on the record, including the provisions listed in the previous paragraph, counsel indicated that the summary was substantially correct and that he reviewed each provision of the plea agreement with movant.  The Court highlighted the provision regarding waiver of appellate rights, and specifically asked counsel whether he discussed such provision with movant – to which counsel answered affirmatively.  After the prosecutor read the factual resume to him, movant agreed that the document accurately reflected the facts of this case as they applied to him.  The Court accepted the guilty plea after finding

2

that the factual resume provides a factual basis for the plea, and that movant had intelligently and voluntarily pled guilty.

On April 22, 2004, the Court conducted a sentencing hearing during which it heard testimony regarding movant's arrest and his statements to law enforcement personnel that he was hired to kill someone in Dallas, Texas, as well as requests from movant concerning sentencing. The Court overruled movant's objections regarding the calculation of his sentence, and thereafter entered judgment upon movant's guilty plea and sentenced him to 120 months imprisonment. Movant filed no appeal.

In November 2004, movant filed the instant motion to vacate wherein he claims that (1) his guilty plea was not knowing and voluntary; (2) he received ineffective assistance of counsel when his attorney failed to file a notice of appeal; (3) the government committed prosecutorial mis-conduct; (4) the Court miscalculated his criminal history score; and (5) his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004).[1] With respect to his first claim, movant specifically alleges that his plea was for a specific sentence not to exceed ninety-six months made pursuant to Fed. R. Crim. P. 11(e)(1)(c). He thus argues that he is entitled to specific performance of that bargain.

In its response to the motion, the government argues that movant waived all claims except for Claim 2. Alternatively, it argues that Claims 4 and 5 are not cognizable on collateral review and that Claims 1 and 3 are procedurally barred. It argues that Claim 2 has no merit.

Despite the argument that movant waived the right to challenge the voluntariness of his guilty plea, the Court considers the voluntariness of the plea and accompanying waiver. If movant

---

[1] Movant does not list the latter two claims in his listing of claims, but as recognized by the government, his arguments suggest that he pursues such claims. Liberally construing his motion to vacate, the Court proceeds as though movant pursues all five claims in the instant motion.

3

did not voluntarily waive his right to appeal and collaterally challenge his conviction and sentence, the waiver provision is simply of no effect. The Court thus considers the voluntariness of the plea and waiver at the outset.

## II. VOLUNTARINESS OF GUILTY PLEA AND RELATED WAIVERS

"When a defendant pleads guilty he or she . . . forgoes not only a fair trial, but also other accompanying constitutional guarantees." *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *accord Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). He may also waive various statutory rights – for example, with an informed and voluntary waiver, a defendant may waive his right to pursue claims on appeal or in a motion to vacate. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam). Because a plea relinquishes rights of the defendant, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Ordinarily, a waiver is entered knowingly, intelligently, and with sufficient awareness, when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances – even though the defendant may not know the specific detailed consequences of invoking it." *Id.* at 630. With "respect to a defendant's awareness of relevant circumstances, [the Constitution] does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id.*

4

Nevertheless, a plea induced by threats, improper promises, deception, or misrepresentation is not voluntary.  *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor*, 933 F.2d at 329.

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000).  Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly.  It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant."[2] *United States v. Vonn*, 535 U.S. 55, 62 (2002).  "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring).  A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of

---

[2] Rule 11 has undergone various changes over the years.  Fed. R. Civ. P. 11 (West 2006) (showing various amendments including amendments in 1999 and 2002); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (referring to Rule 11 as the "guilty-plea safeguards"); *United States v. Vonn*, 535 U.S. 55, 62 (2002) (recognizing the evolution of the rule over the past three decades).

the consequences, however.  The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his or her plea.  *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea").  Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea."  *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'"  *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).

> When examining the totality of the circumstances, a reviewing court should "consider the complexity of the charge, the defendant's level of intelligence, age and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government."

*United States v. Cross*, 57 F.3d 588, 591 (7th Cir. 1995) (citations omitted).  Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."  *Gracia*, 983 F.2d at 627-28.  A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine."  *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002).  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review."  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

With these principles in mind, the Court examines the voluntariness of movant's plea in light of his allegations. A review of the record as a whole reflects that movant, a twenty-five-year-old man with a ninth grade education, faced a charge that he was a felon in possession of a firearm. Movant was informed about and understood the nature of the charge against him. He knew the maximum prison term and fine which he could face for the charged offense. The plea agreement indicates that movant understood that he was waiving certain Constitutional rights by pleading guilty. It also indicates that he understood that the Court would impose the sentence in accordance with the sentencing guidelines, that there was no agreement as to what the sentence would be, that no one promised or represented what sentence the Court would impose, and that no one could predict with certainty the applicable guideline range until the completion of a presentence investigation. The agreement lastly indicates that the plea agreement constituted the entirety of the agreement entered in this case. The waiver provision of the plea agreement explicitly and unambiguously waives movant's right to directly appeal or collaterally challenge his conviction and sentence pursuant to 28 U.S.C. § 2255 except in limited circumstances.

In addition, the transcript of the rearraignment proceedings clearly shows that movant was informed of such waiver. When the Court admonished him in accordance with Fed. R. Crim. P. 11, he specifically indicated that he had no questions about the agreement. In light of the statements of movant and his attorney at rearraignment, the Court found that movant entered the plea voluntarily. The totality of the circumstances shows that, at the time of the rearraignment proceedings and the entry of his plea, movant understood that he was waiving his appellate rights as set forth in the plea agreement. He entered such plea with sufficient knowledge regarding the waiver of his

7

appellate rights, including his right to present claims in a collateral attack pursuant to 28 U.S.C. § 2255.

Moreover, prisoners who challenge their guilty pleas on collateral review must overcome various presumptions related to court documents and prior testimony.

> [R]epresentations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Courts also presume the regularity of court documents and accord them "great weight." *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity"). Movant has not overcome these presumptions.

For these reasons, petitioner provides no legitimate basis to find that he entered his plea involuntarily. Additionally, although he contends that the plea agreement provides for a specific sentence not to exceed ninety-six months, the plea agreement simply does not support that contention. Furthermore, although "an ineffective assistance of counsel argument survives a waiver of appeal . . . when the claimed assistance directly affected the validity of that waiver or the plea itself", *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002), movant has alleged no ineffective assistance of counsel that rendered his plea involuntary.

The Court should reaffirm its finding that movant voluntarily and understandingly pled guilty to the charge against him.  By such plea, movant voluntarily waived his right to appeal except on three specific grounds not raised in the instant motion to vacate and waived his right to collaterally attack his conviction or sentence in a motion to vacate except on grounds of ineffective assistance of counsel.  Consequently, except for his claim of ineffective assistance of counsel (Claim 2), movant's informed and voluntary waiver bars collateral relief in this case.  In view of movant's waiver, it is clear that he is entitled to no relief on Claims 1, 3, 4, and 5.  The Court thus proceeds to movant's ineffective assistance claim.

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his second claim, movant contends that his attorney rendered ineffective assistance when the attorney failed to file an appeal regarding his conviction and sentence.

To successfully state a claim of ineffective assistance of counsel, the prisoner must generally demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.  For instance, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a

9

manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  On the other hand, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.*  A failure to file an appeal is not *per se* deficient representation absent specific instructions to file an appeal. *Id.* at 477-78.  The appropriate inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 478 (quoting *Strickland*, 466 U.S. at 688).

To gauge the reasonableness of the assistance given in the specific context of a failure to file a notice of appeal "when the defendant has not clearly conveyed his wishes one way or the other", *Flores-Ortega* provides:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal.  We employ the term "consult" to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.  If counsel has consulted with the defendant, the question of deficient performance is easily answered:  Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.  If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question:  whether counsel's failure to consult with the defendant itself constitutes deficient performance.  That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

*Id.* at 477-78 (citation omitted).  Although the Supreme Court recognized "that the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal," it rejected a bright-line rule that a "failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Id.* at 479.  It found such a bright-line rule inconsistent with "*Strickland* and common sense", and provided examples of non-deficient conduct:

For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information.

*Id.* at 479-80 (citation omitted). The Supreme Court went on to hold that

counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. Of course, when "making this determination, courts must take into account all the information counsel knew or should have known", including the "highly relevant factor" of whether the defendant pled guilty." *Id.* Nevertheless,

[e]ven in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* In addition, when the defendant has been fully informed about his appellate rights and has waived those rights, an attorney does not render deficient representation by failing to file a notice of appeal. *Cf. White v. Johnson*, 180 F.3d 648, 654-55 (5th Cir. 1999) (finding no waiver but recognizing that a waiver of appeal impacts the reasonableness of the attorney's actions).

11

Not only must movant show that his attorney was deficient in not filing an appeal on his behalf, he must generally show that he was prejudiced by the deficiency of counsel. Although when counsel fails to file a *requested* appeal, prejudice is presumed, *see Rodriquez v. United States*, 395 U.S. 327, 329-30 (1969), the Supreme Court has declined to presume prejudice in other cases where the attorney has failed to file an appeal, *see Flores-Ortega*, at 484. It has instead applied "the critical requirement that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." *Id.* To show prejudice in cases where the defendant has not specifically requested his attorney to file an appeal, the "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.*

In this instance, movant does not allege that he requested his attorney to file an appeal. Additionally, nothing of record indicates that counsel consulted with movant regarding movant's desire to appeal. For purposes of this § 2255 action, the Court will assume without deciding that counsel did not consult with movant regarding his appellate desires. Therefore, to succeed on his claimed ineffective assistance due to his attorney's failure to file an appeal on his behalf, movant must show that the attorney rendered deficient representation when he failed to consult regarding movant's appellate desires.

Under the circumstances of this case, the Court finds no deficiency of counsel from the failure to consult with movant about his desire to appeal. The plea agreement contained a specific provision regarding movant's retained limited right to appeal. Counsel discussed this provision with movant, and movant indicated that he understood it. The Court highlighted the provision before accepting movant's guilty plea. Nothing of record indicates that movant had any desire to appeal

12

his conviction or sentence. There is simply no reason to think that movant reasonably demonstrated to counsel that he was interested in appealing.

There is also no reason to think that a rational defendant would want to appeal in this case. As previously shown, movant voluntarily pled guilty and waived his right to appeal except on three specific bases, not at issue here. As stated in the plea agreement entered into by him, movant did not bargain for a specific sentence. The Court, furthermore, did not impose a sentence that exceeded the statutory maximum sentence. It did not upwardly depart from the applicable guideline range. Although movant claims that the Court miscalculated his sentence under the guidelines, such claim does not present an arithmetic error at sentencing that might have been brought on appeal – it instead focuses on various legalities regarding the calculations and imposed sentencing enhancements. In short, movant has presented no issue that could have been appealed in light of the limited appellate rights he reserved after voluntarily pleading guilty and waiving his right to appeal. He has not overcome the presumption that his attorney's conduct falls within the wide range of reasonable assistance.

Movant here was fully aware of the limited extent of his appellate rights, but has presented nothing to show that he wanted his attorney to perfect an appeal on his behalf. Furthermore, because the claims raised in the instant motion to vacate do not fall within his reserved limited right to appeal, counsel cannot be deemed to have rendered deficient representation by failing to present them on appeal. Attorneys do not render deficient representation by failing to present waived issues on appeal.

For all of these reasons, the Court finds no deficiency of counsel based upon the failure to file an appeal. In the absence of a deficiency of counsel, movant's claim of ineffective assistance of

counsel necessarily fails.  The Court, nevertheless, notes that, in light of the totality of the circum-stances of this case, movant has demonstrated no reasonable probability that, but for counsel's presumed failure to consult with him about an appeal, he would have timely appealed.  Claim 2 provides no basis for relief in this § 2255 action.

## IV.  EVIDENTIARY HEARING

Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary.  No evidentiary hearing is required, when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255. In this instance, the matters reviewed by the Court conclusively show that movant is entitled to no relief.

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice.

**SIGNED this 2nd day of March, 2007.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

14

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15